That case is submitted. We'll go to the fourth and final case of the day, 23-13195, Sterling v. Cadillac. We've got Mr. King here for the appellant. Yeah, the appellant and cross-appellee. Ms. Daly here for the appellee and cross-appellant. Mr. King, whenever you're ready. May it please the Court, Michael King with Greenberg Charg on behalf of Sterling BV, the plaintiff in the underlying case. Sterling won its jury trial in this case, but its damages were limited by pretrial determinations by the trial court that consequential damages would not be submitted to the jury. So the damages were limited. This is essentially a case involving the battle of the forms as to what is an offer and what was an acceptance in this case. There was a quotation submitted by Cadillac that had a price. There was a purchase order that was submitted by Sterling that had all of the details of the particular order, including the price. Mr. King, can I maybe just push back a little bit and get your response to this? So I read the relevant quote from Cadillac as including more than just a price. I mean, to me it looks like it included a shipping address, quantity, specs, and a price. The accompanying email included a specified time of performance. We know from the course of dealing that Sterling was pretty specific about what it needed. And perhaps most importantly, the same document, the quote, the Union City quote, calls itself a contract in the fine print, admittedly. But it says, if performance is prevented by any cause of force majeure, then this contract will be voidable without penalty. So, Your Honor— So there's more than just a price quotation. Fair? There are a few details, but this document only relates to 26 or 2,000—2,600,000 impressions. That's what it deals with. It doesn't tell you what the impressions are. It doesn't tell you what order they would be in. These were for a variety of different baked goods. So this order form doesn't tell you anything because you're not—they weren't looking for 2.6 million cookie wrappers, for instance. There were going to be a series of different—they were going to be delivered at different dates. So there were a number of details, but the most important part being that both the district court and Cadillac's representatives said that this document as it existed, this quotation, was indefinite, and therefore—that's what the district court said— this document was indefinite and therefore not enforceable, and wasn't enforceable until Sterling came forward with the details. Or is it that it wasn't enforceable until Sterling came forward with the details, or it wasn't enforceable until Sterling accepted the offer? This offer is not capable of being accepted, and that was what the district court found, that there were not sufficient terms in the quotation to make an enforceable agreement. It was only after the purchase order comes forward that you have the details of a contract that would be enforceable, and that was enforceable once it was accepted, and it was accepted by Cadillac's performance under the purchase order. But weren't some of the terms in the initial document, and then Sterling clarified other terms, and then there was an agreement, right? There was an agreement once Cadillac performed under the purchase order. But why wouldn't a sophisticated party like your client be expected, if it disagreed with the consequential damages provision in the initial document from Cadillac, why wouldn't your client be responsible to say, you know, we do not agree to the suggested term on consequential damages? It did. It submitted a purchase order with terms and conditions that provided for the recovery of consequential damages, and that gets you to which is the offer and which is the acceptance. This document, a quotation, and the cases are pretty universal on this subject, is that a quotation is not an offer. Actually, I think they uniformly say a quotation is generally or typically not an offer, right? Correct. And to your credit in your briefing, you include those adverbs, but so it's not an airtight rule, right? A quotation can include sufficient terms to make it an offer. It could, Your Honor, if the acceptance of the quotation constitutes a binding contract. But the quotation, it has to be an enforceable agreement. What does it mean? There can't be an acceptance of this quotation. Sorry. No, that's okay. But what does it mean? I'm not seeking to, like, hang you on a technicality, but what does it mean? I assume that your client drafted the document. So what does it mean when it characterizes itself as a contract? Well, that's Cadillac's language, okay? But if this is a form document, it could be used for any number of different purposes that don't involve the specifics of what we were doing. It's possible that a quotation of this sort could have contained all of the terms of an agreement and therefore would be enforceable. It's possible. It's just in this case, it wasn't sufficiently detailed that it could be enforced by either party. If Sterling had come to Cadillac and said, this is fine, we're in agreement, there's nothing that Cadillac could do to enforce that agreement because there's no specificity in the document as to what this document means. 2.6 million impressions doesn't tell you anything. Because the number is wrong or because it doesn't specify within the 2.6 million what different kind of impressions we're talking about? It doesn't tell you what the impressions are. It doesn't tell you what order that they were going to be delivered in. Is 2.6 million the right number? That's what it says. It's not, oh, no, no, no. In the actual performance, there were, say, 600,000 cookies. There were 600,000 biscuits. There were 600,000 pizzas. But do those add up to 2.6 million? They do not. Okay. What do they add up to? I'm just, so I don't lose track of. Oh, my goodness. There were 13 purchase orders. I'd be happy to count them up and submit it to you. No, no, no. That's okay. But it wasn't this. So the point is, is that the case law says that for an offer to be an offer, it has to have the details of the contract so that it can be enforced. And the district court said this offer was not sufficient in its details. And that's the whole point of offer and acceptance. That's why you go and you say, okay, what's it going to cost if we order something from you? And they tell you what it's going to cost. And then you submit a purchase order, and they can accept it or they can reject it. And those words come out of Cadillac's general counsel and chief financial officer, Ms. Olsen, who said, we could reject, we could have rejected the purchase order. Well, that means Sterling is the one that is submitting the offer, and Cadillac is going to make a determination as to whether to accept it or not. And remind me what you think consummated this transaction. I'm sorry. Remind me what you think consummated this transaction, because I don't think we have any signed agreements, right? No. Well, this goes back to your other case about whether an email is a sufficient signature. The district court said it was. I don't dispute that for purposes of this agreement, the court communications back and forth were sufficient to acknowledge that there was an agreement on the terms of the purchase orders. So an email from Cadillac, you say, confirmed that Cadillac agreed to your final document, right? I'm saying that the course of the communications back and forth established that Cadillac was going to perform under the respective purchase orders. They never said, we accept your purchase order, from the standpoint of that's the deal. What they did say was, we're going to print your impressions. And the effect, and I think the audiovisual case says this, is acceptance can be recognized based upon the performance in response to the purchase order, and that's what happened here. Okay, very well. Thank you so much. You've got five minutes remaining for rebuttal. Ms. Daly, let's hear from you. Thank you, Your Honors, and may it please the Court. My name is Sarah Daly, and I represent Defendant Appellee Cadillac Products Packaging Company in this case. I think as an initial matter, it's important to realize that what Cadillac did was not simply submit a quote. It submitted a bid as part of Sterling's bid process. And as part of this process, Sterling provided information prior to the quote concerning the volumes that were to be expected weekly, the type of lead time that would be needed, and the shipping addresses. And as part of the invitation to bid, Sterling required Cadillac to submit a price quotation that would be in effect for four years, and that all parties understood at that time that whatever quote that Cadillac submitted would bind them to that quote if it were accepted through a purchase order for four years. So is it your contention, Mr. King says that the quote, the Union City quote, was sort of like missing some key terms that only came onto the scene afterward in your subsequent communication. Is it your contention that those key terms came about as a result of preexisting sort of course of dealing? Yes, Your Honor. And this is also upheld in the California Supreme Court in Steiner where it says that even if an offer or an acceptance is missing essential terms such as quantity or price or place of delivery, it can still be a binding contract. The important thing is to actually give legal effect to what the party's conduct was and what their intentions were. And here it's clear that the intentions were for Cadillac's quote to be binding on them if a purchase order was accepted. And I think Deborah Osborne testified at her deposition on behalf of Cadillac that quote, at the point of accepting our quote and issuing a purchase order, we had an agreement. And later on she testified once we receive a purchasing order that matches our quote and the purchase order is correct, we're bound to ship that. So I think the parties understood that there was an agreement in place as soon as the first purchasing order was submitted to Cadillac. But just to dumb it way down for me, what I'll call the missing terms from the quote sheet, you agree they have to preexist the purchase order. They can't come subsequently. Not necessarily because of the course of dealing between these parties. They are sophisticated entities that are in a fairly small industry that have been dealing with each other for years at this point in time. And there were certain understandings of that industry which could also supplement the contract going forward. Including that key contract terms can post-date the acceptance? Sorry, the offer? I think the agreement was on the price as part of the bid process, and that was the agreement. And by agreeing to that price with the purchase order, that created the contract between the parties. And I think this is further evidenced by the fact that once Sterling changed the shipping address to San Antonio, they asked Cadillac to reissue another quote for the Union City plant rather than just simply sending them a purchasing order that Cadillac could accept or reject with the new shipping address with the same price. What should Sterling have done, in your view, if it wanted to provide for consequential damages in the contract? I think a master agreement would have been helpful in this situation. But I also think maybe attaching their own terms and conditions to the purchasing order, which I think my colleague inadvertently said that they did. But in this case, every purchasing order that was submitted to Cadillac after the quotation did not include the terms and conditions that supplied consequential damages to them. There's apparently some disagreement about that. But I see, and correct me if this for some reason is not governing, but the pages aren't numbered, which is unhelpful. It looks like 14C of the Sterling Foods LLC purchase order terms and conditions. 14C of that document, roughly page, I don't know, 15 or so, should seller default in performance. Sellers shall be liable and shall indemnify Sterling against all claims by the government or others related to said default and all losses, expenses, and incidental and consequential damages incurred by Sterling in connection with such default. And then it goes on. Why isn't that consistent with what you're saying Sterling should have done? That document was submitted during the negotiation phase of the bid. It was with all the other documents. It predated our quote, which was the offer. And because our quote included our terms and conditions, which precluded consequential damages, and Sterling accepted that term and condition through its acceptance of the purchase order without qualification, we contend that our terms and condition are the express terms of the contract, which— Okay, so this one came first, and then Sterling's came first. This document came first, and then Cadillac's came second. So you're saying that was the second word on the topic, and that was accepted by Sterling, and so that's what the answer is. I know I'm trying to dumb it down, but— That came during the negotiation process. Nobody contends that that document was part of either an offer or an acceptance. Okay. Our Union City quote, which contained our terms, was the offer in this part, which was accepted through the purchase order that was submitted in response to that quote. And this was not part of that purchase order, correct? Right, and if we hadn't included our terms and conditions as an express term in our quote, that may come in during course of dealing or course of performance. However, because we included the express term allowing consequential damages, that can't be overturned by a course of dealing or anything extrinsic evidence like that. Okay. I'll be interested to see what your friend on the other side says about that, but that's helpful to know your perspective on that. And I do want to touch briefly on our cross appeal. Yeah, that's what I had a question about. So it seems like you're arguing de novo review is appropriate, but the heart of your argument seems to be about whether there were sufficient facts in the record to support the judgment. Can you clarify for me? Sure. The precedent from this court says that application of state law, even in the context of whether an award of prejudgment interest should be awarded, is reviewed de novo. But we believe that even under an abuse of discretion, the judge in this case did not perform the correct balancing of interest that he should have under California law, and at points misstated and mischaracterized the record in order to do so. While we admit that the delay in this case was significant and Cadillac wasn't blameless in that situation, the court did mischaracterize the evidence to place the blame solely on Cadillac in that situation. But the court never got to the balancing of interest, which is the second and third factors of what the California courts typically look at. The first is whether an award of prejudgment interest would unfairly punish the defendant for litigating a bona fide dispute. And this interest is recognized by the general rule disallowing prejudgment interest in cases where there are unliquid damages because generally the defendant in that case is not aware of the amount of the debt to be paid in that case. And here there has always been a large disparity between what Sterling understood were available as damages. They always contended there were between $2 and $4 million in consequential damages available and what Cadillac contended was available. And the court by refusing to even look at that factor unfairly punished Cadillac for litigating a dispute which it ultimately won in the court below. And the final factor. I thought the point under California law of this penalty factor was really just to avoid interest-free loans in effect. Right? So it's not, it's just like it's about sort of transaction costs. It would be sort of unfair in the ether for, you know, one party to effectively have an interest-free loan from the other during the pendency of litigation. That is the case when the damages are liquidated and they're known. But when there's a sum uncertain for unliquidated damages such as this case, when the loan amount isn't known, you can't pay that loan in order to pay it back. And the general rule in California is that a prejudgment interest is not allowed because you can't pay a debt you are not aware of. So the general rule recognizes the fundamental unfairness of that to the defendant and the statute provides an exception that when the court in balancing that interest against the plaintiff's interest finds that it's reasonable to award that interest.  I have a few questions actually that are unrelated to the merits. Are you familiar with Rule 32.1 from this court about the formatting of briefs? I'm sorry. About Rule 32-1 about the formatting of briefs. That rule requires that they be bound or stapled on the left side. Yes, Your Honor. And Rule 32-2 requires that the brief be securely bound along the left-hand margin so as to ensure that the bound copy will not loosen or fall apart. And then Federal Rule 32A.3 requires that the brief's binding be secure, not obscure the text, and permit the brief to lie reasonably flat when open. I hate to bring this up at oral argument but I don't know if you're aware that Swift-Curry's brief in this case did not comply with those rules. It was bound at the top which made it very difficult to read. So on the bright side, I hope all parties are aware we really are reading your briefs but those rules are there not just to impose silly requirements on parties but they really do make it much easier for the judges to read the briefs. So I hope that you'll communicate with whoever your firm is in charge of brief formatting and let them know that those requirements really are necessary for our review of the cases. I apologize for that, Your Honor. I was intercepted and the rules were followed and I will have a discussion with whoever did not follow them. Thank you. I very much appreciate that. The final factor in balancing the interest for prejudgment interest is whether or not a settlement offer has been given by the plaintiff that places the amount of prejudgment interest at risk. In this case, the court found that a proposal by Sterling to return unused Cadillac film in exchange for Cadillac not bringing its counterclaim satisfied this. But in reality, Sterling never had a settlement offer lower than $950,000 in this case and never indicated any willingness to accept an offer lower than this which was about five times what the jury awarded at $186,000. And the California courts have held that this factor does not weigh in favor of prejudgment interest where the settlement offer is made by the plaintiff far exceeded the value of the judgment ultimately awarded at trial. So based on these factors, we contend that the district court erred in failing to properly balance the interests of the parties and awarding prejudgment interest in this case. If the court doesn't have any further questions. Okay. Very well. Thank you so much. Thank you. Mr. King, you've got five minutes left.  So there were a couple questions there about a bid process and prior course of dealing as having affected what the understanding of the contract was. First of all, you have to go back to the district court's opinion at record site document 118 on page 15 where the court says Cadillac's response with the Union City quote provided the requested pricing and delivery but exact quantities and the priority of printed items was not agreed upon at that point. It was not agreed upon. At that point, the agreement was indefinite and the parties' respective obligations and potential remedy for any breach would be unclear. Thus, the contract had not been formed. That is what the district court ruled with respect to that quotation. It says then the purchase order incorporated the essential terms of a contract. Well, that's exactly what the law is as we've cited it to you. That a quotation is an invitation for an offer and the offer contained the details of the transaction and that was accepted by Cadillac's performance. Is your friend on the other side correct that Sterling's language about consequential damages came first and Cadillac's came second? Yeah, that was also incorrect and that's the next point I wanted to raise for you. Sterling's purchase order included purchase order notes. So each purchase order was accompanied by six or seven pages of notes and those notes then incorporate by reference the terms and conditions. Now, when- Can you give me a record side of page where we can look to see? Sure, this is our initial brief at page 6. Right, but what about the actual document? Yeah, document 93-18 at page 8. And you're saying that that's where the purchase order incorporated the notes that were shared before? That's where the terms and conditions are. I'm looking document 93-18 at page 2 and page 2 is the purchase notes that then incorporate in section 7 the terms and conditions. So the purchase notes in section 7 incorporate the terms and conditions and the terms and conditions then contain the provisions that relate to consequential damages. So the point being that it was the purchase order that became the grounding of the contract. Your questions relate to whether prior contractual activities supplemented the quotation sufficiently to create a binding contract. And that's not what the district court held. The district court, and they just cited Steiner, and Steiner was a case in which the court went through a process of adding terms to the agreement or figuring out what the agreement was. But that's not what this court did. This court just picked between one document and the other. Even if that's not what the district court here held, is it possible that the district court might have been right for the wrong reason, that perhaps there were preexisting sort of what I'll call course of dealing terms that then sort of hit, so to speak, when the price quote comes in with its respective details. So even if the district court was wrong in saying that, well, everything was still indefinite at that point and you had to wait for the purchase order to come in with some supplemental details, is it, might it in fact be the case that the prior course of dealing supplied those details? It would not, Your Honor, because this was, these are specialty products that are being produced pursuant to a totally different requisition from the federal government for the Department of Defense. So the details of what Cadillac performed in 2013 would not have informed what the delivery dates would be, what the necessary products would be, what the impressions would relate to because the impressions would have been different as well. So the district court's finding was totally accurate that there were not sufficient details in the quotation to constitute an enforceable contract. Let me ask you just one more. I guess this is sort of general question, I guess. For something to constitute an offer capable of being accepted, presumably you don't need sort of A to Z every last thing. I mean, presumably you need sort of the fundamental bones of a contract. So where do we, where is the line, like what's enough? So that's the entire UCC, right? The sales provisions of the UCC deal with, sometimes even price can be a term that the court can apply. But you don't get there until there is an understanding between the parties that they have reached an enforceable contract. And the law is that in order to determine whether you have an enforceable, whether the promise, whether the offer itself, whether that offer can be enforced by judicial mandate. And the answer is there weren't details sufficient in this document to even get to the point where a court would start to say, all right, I understand there's an agreement between the parties. There's a missing term or there's a misunderstanding of one of the terms and I've got to utilize my authority under the UCC to imply or impose a term. Okay. There wasn't, we never got to that level. Got it. That's helpful. Okay. Thank you very much. Thank you both very much. That case is submitted and court is in recess until 9 a.m. tomorrow morning.